Sealed

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CIVIL ACTION NO. 4:12CV2988 |
| **EX RELS.** MARIBETH HOLDERITH | § | |
| LESLIE FLAKE, AND ARTHUR | § | |
| MINGUEZ, JR.  PLAINTIFFS | § | **FILED IN CAMERA AND UNDER** |
| | § | **SEAL** |
| VS. | § | |
| | § | **FALSE CLAIMS ACT** |
| ONE STEP DIAGNOSTIC, INC., | § | |
| ONE STEP DIAGNOSTIC II, INC., | § | |
| ONE STEP DIAGNOSTIC III, L.L.C., | § | United States Courts |
| ONE STEP DIAGNOSTIC IV, L.P., | § | Southern District of Texas |
| ONE STEP DIAGNOSTIC V, L.P., | § | FILED |
| ONE STEP DIAGNOSTIC VI, L.P., | § | |
| ONE STEP DIAGNOSTIC VII, INC., | § | OCT 0 4 2012 |
| ONE STEP DIAGNOSTIC VIII, L.P., | § | |
| ONE STEP DIAGNOSTIC IX, L.P., | § | David J. Bradley, Clerk of Court |
| ONE STEP DIAGNOSTIC X, L.P., | § | |
| ONE STEP DIAGNOSTIC XI, L.P., | § | |
| ONE STEP DIAGNOSTIC XII L.P., | § | |
| FUAD COCHINWALA, RAHUL | § | **MEDICAID AND MEDICARE FRAUD** |
| DHAWAN, ARC IMAGING LLC, | § | |
| DAVID VILLACRES, M.D., VINCENT | § | |
| JETER, D.C., MARKS SANDS, | § | |
| D.P.M.,JEFFREY BAXTER, D.P.M., | § | |
| BERNABE CANLAS, D.P.M., AND | § | |
| JOHN DOES 1-99 | § | |
| DEFENDANTS | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' COMPLAINT PURSUANT TO 31 U.S.C. §§3729-3732 OF THE FEDERAL FALSE CLAIMS ACT

The United States of America by and through *qui tam* relators Maribeth Holderith,

Leslie Flake and Arthur Minguez, Jr., bring this action under 31 U.S.C. 3729, *et seq.*, as

amended (False Claims Act) to recover all damages, penalties, and other remedies

established by the False Claims Act on behalf of the United States.

## I.  PRELIMINARY STATEMENT

1.  This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used, or caused to be made, used, or presented, or any combination thereof, by the Defendants, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims that were submitted to the federal Medicaid program.

2.  This action is also brought on behalf of the State of Texas (pursuant to the Texas Medicaid Fraud Prevention Law, (TEX. HUM. RES. CODE, Sections 36.001 – 32.132).

3.  The False Claims Act was enacted during the Civil War. Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on behalf of the Government.

4.  The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

5.  The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the Defendants during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

6.  Under Medicare and Medicaid, medical providers have specific responsibilities to prevent false claims from being presented and are liable under the False Claims Act for their role in the submission of false claims.

7.  This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S. 3729, *et seq.*, as amended.

8.  This Complaint describes Defendants' practices of inducing doctors to make patient referrals by violating the Federal Fraud and Abuse Anti-Kickback and/or the Prohibited Referral Provisions of 42 U.S.C. § 1320a-7b and 42 U.S.C. § 1395nn (hereinafter referred to as the Anti-Kickback Law and Stark Law, respectively). These practices include, but are not limited to, making payments, via cash or check directly by Defendants or through a corporate "shell," directly to physicians engaged in the scheme in return for referrals of imaging studies to Defendants; providing physicians, including chiropractors and podiatrists, with phony or sham medical contracts excessively compensating such referring health care providers as "medical consultants" even when some of the alleged "consultants" were not even medical doctors.

9.  As required by FCA, 31 U.S.C. § 3730(b)(2), Relators have provided to the Attorney General of the United States and to the United States Attorney for the

Southern District of Texas, simultaneous with and/or prior to the filing of this Complaint, a statement of all material evidence known to Relators at their time of filing, establishing the existence of the Defendants' legal responsibility for the false claims. Because the statement includes attorney-client communications and work product of Relators' attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relators understand this disclosure to be confidential.

10. Relators are informed and believe that the false claims described herein, including violations of Stark Law and Anti-Kickback Law, began no later than 2008 and continue to date.

11. Relators bring this action based on their direct knowledge and also on information and belief; none of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. § 3730(e)(4). Notwithstanding same, Relators are original sources of the facts alleged in this Amended Complaint.

12. As may be required by the Texas Medicaid Fraud Prevention Act, Relators have provided to the appropriate state officials of Texas, simultaneous with and/or prior to the filing of this Complaint, a statement of all material evidence known to Relators at their time of filing, establishing the existence of the Defendants' legal responsibility for the false claims. Because the statement includes attorney-client communications and work product of Relators' attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relators understand this disclosure to be confidential.

## II. PARTIES

13. Relator Maribeth Holderith is currently employed in the job capacity of Physician Relations for Defendants Fuad Cochinwala and the corresponding One Step Diagnostic entities outlined below in this subchapter.   Relator Leslie Flake, was employed by a physician, Dr. David. F. Villacres, who accepted illegal kickbacks from Defendants in return for patient referrals. Relator Minguez was a co-founder and previous Vice President for A/R Net L.L.C., a company involved in funding healthcare payments for patients involved in personal injury civil litigation who were unable to pay their medical expenses.  Relators Holderith and Flake witnessed firsthand the exchange of illegal kickback payments by Defendants to the referring physicians and healthcare providers that Defendants knew were false claims under the False Claims Act. Relator Minguez was provided direct information by physicians in the Houston, Texas metropolitan area which substantiated Defendants' deliberate practice of offering monthly payments in exchange for payment referrals.

14. Defendant Fuad Cochinwala is an individual residing in Houston, Texas in the District where the false claims arising under the False Claims Act were made. Defendant Cochinwala is the registered agent and principal officer of One Step Diagnostic, Inc.  Defendant Cochinwala previously conducted business under the name Mohammed Reyman and used that name until at least 2007.  Beginning in October of 2005, Defendant Cochinwala began forming separate, but related imaging facilities, all under the One Step Diagnostic banner. By August 18, 2012, Cochinwala had formed thirteen (13) different entities, including a holdings company, all using the One Step Diagnostic name. All thirteen entities have the same business address. Cochinwala

uses himself or his relatives as the corporate officers and managers of the different business entities, and it is through these entities that he has engaged in knowingly submitting false claims to the Government by offering illegal and/or excessive kickbacks to physicians, podiatrists, and chiropractors in the Houston, Texas metropolitan area in exchange for the referral of Medicare and Medicaid patients.

15. Defendant One Step Diagnostic Inc. is a corporation or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

16. Defendant One Step Diagnostic II, Inc. is a corporation or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

17. Defendant One Step Diagnostic, III, L.L.C. (a.k.a. One Step Equipment, L.L.C.) is a corporation or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

18.  Defendant One Step Diagnostic IV, L.P. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which

these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

19. Defendant One Step Diagnostic V, L.P. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relatives, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

20. Defendant One Step Diagnostic VI, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

21. Defendant One Step Diagnostic VII, Inc. (a.k.a. One Step Diagnostic Holdings, Inc.) is a corporation or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

21. Defendant One Step Diagnostic VIII, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government

7

under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

22. Defendant One Step Diagnostic IX, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

23. Defendant One Step Diagnostic X, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

24. Defendant One Step Diagnostic XI, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him and his relative, Farhan Faiz, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

25. Defendant One Step Diagnostic XII, LP. is a limited partnership or some other business entity operating in the State of Texas. It is owned by Fuad Cochinwala and operated by him, and is one of the vehicles by which these false claims enumerated in this Complaint, were submitted to the Government under the False Claims Act. It is located at 11221 Katy Freeway, Ste. 201, Houston, Texas 77079.

26. Defendant Rahul Dwahan is an individual who operates several imaging centers in the Houston metropolitan area, including but not limited to: Deerbrook Diagnostic and Imaging LLC, Galleria MRI and Diagnostics, LLC, and Elite Diagnostics, Inc. Dhawan also operated the shell corporations NSTZ Consulting and Houston Diagnostic. Relator Flake personally witnessed Defendant Dhawan and her employer exchange illegal kickback monies that were collected by Defendant Dhawan in the name of One Step Diagnostic. Further, Relator Holderith personally distributed kickback checks in the name of Houston Diagnostic, an entity communicated to Relator Holderith as a scheduling company managed by Defendant Dhawan.

27. Defendant Arc Imaging is a limited liability corporation or some other business entity operating in the State of Texas. It is owned and operated by Nauman Jangda and Siddique R. Adbul. Abdul is a suspected relative of Defendant Cochinwala. Arc Imaging was presented as an "affiliate" company of One Step Diagnostic, and illegal kickback checks issued in Arc Imaging LLC's name were distributed to physicians in exchange for patient referrals to One Step Diagnostic. Arc Imaging LLC is one of the vehicles by which these false claims enumerated in this Complaint were submitted to the Government under the False Claims Act. It is located at 7941 Katy Freeway, Ste. 302, Houston, Texas 77024.

28. Defendant Mark Sands is a podiatrist duly licensed in the State of Texas and practicing the health care discipline of podiatry under the name of "South Texas Foot Specialists." Dr. Sands and his partners and/or co-owners, Drs. Bernabe Canlas and Jeffrey Baxter, operate three centers in the Friendswood, Pearland, and League City areas in Texas. Along with Defendants Baxter and Canlas, Dr. Sands entered into a

sham "Consultant" arrangement with Co-Defendants' One Step and Cochinwala to refer patients to the One Step imaging centers in return for a monthly kickback.

29. Defendant Jeffrey Baxter is a podiatrist duly licensed in the State of Texas and practicing the health care discipline of podiatry under the name of "South Texas Foot Specialists." Dr. Baxter and his partners and/or co-owners, Drs. Bernabe Canlas and Mark Sands, operate three centers in the Friendswood, Pearland, and League City areas in Texas. Along with Defendants Sands and Canlas, Dr. Baxter entered into a sham "Consultant" arrangement with Co-Defendants' One Step and Cochinwala to refer patients to the One Step imaging centers in return for a monthly kickback.

30. Defendant Bernabe Canlas is a podiatrist duly licensed in the State of Texas and practicing the health care discipline of podiatry under the name of "South Texas Foot Specialists." Dr. Canlas and his partners and/or co-owners, Drs. Mark Sands and Jeffrey Baxter, operate three centers in the Friendswood, Pearland, and League City areas in Texas. Along with Defendants Sands and Baxter, Dr. Canlas entered into a sham "Consultant" arrangement with Co-Defendants' One Step and Cochinwala to refer patients to the One Step imaging centers in return for a monthly kickback.

31. Defendant Vincent Jeter, D.C. is a doctor of chiropractic medicine duly licensed and currently practicing his medical discipline at 316 East House Street in Alvin, Texas 77511. Dr. Jeter accepted multiple kickbacks from Defendants Cochinwala, One Step Diagnostic, and Arc Imaging LLC in order for referrals of his patients to Defendants' imaging facilities.

32. Defendant David Villacres, M.D. is a medical doctor duly licensed in the State of Texas and practicing his discipline for the facility King's Crossing Rehabilitation

Therapy located at 3407 River's Edge Trail in Kingwood, Texas 77339. Dr. Villacres entered into an arrangement with Defendants Dhawan, One Step Diagnostic, and Dr. Villacres to illegally split fifty (50) percent of the revenues from each individual patient Dr. Villacres referred to One Step's imaging facilities.

33.    Defendants' John Doe 1-100 are physicians, chiropractors, podiatrist, medical clinics and their owners and/or medical facilities and their owners who accepted multiple kickbacks from Defendants Cochinwala, One Step Diagnostic, and Arc Imaging LLC in order for referrals of his/her/their patients to Defendants' imaging facilities.

### III. JURISDICTION AND VENUE

34. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331, and 31 U.S.C. 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. 3729 and 3730.

35. There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. 3730(e).

36. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. 3732(a) because that section authorizes nationwide service of process and because all Defendants have at least minimum contacts with the United States, and can be found in, reside, or transact or have transacted, business in Houston, Harris County, Texas in the Southern District of Texas.

37. Venue exists in the United States District Court in the Southern District of Texas, Houston Division, pursuant to 31 U.S.C. 3730(b)(1) because all of the Defendants have at least minimum contacts with the United States, and all the

Defendants can be found in, reside, or transacted business in Houston, Texas in the Southern District of Texas.

## IV. APPLICABLE LAW

38. Medicaid is a public assistance program providing for payment of medical expenses for low-income patients. Funding for Medicaid is shared between the federal government and state governments.

39. Every Medicaid provider must agree to comply with all Medicaid requirements.

40. False Claims Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement to get a false or fraudulent claim paid by the Government. 31 U.S.C. 37299(a)(1)&2.

41. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. 3729(b)

42. The False Claims Act is violated not only by a person who makes a false statement or a false record to get the Government to pay a claim, but also by one who engages in a course of conduct that causes the Government to pay a false or fraudulent claim for money.

43. In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare Program, to pay for the costs of certain healthcare services. Entitlement to Medicare is based on age, disability, or affliction with certain diseases. See 42 U.S.C. §§ 1395 to 1395ccc. There are two general components to the Medicare program: Part A and Part B.

44. The False Claims Act is the government's primary tool to recover losses due to fraud and abuse by those seeking payment from the United States. *See* S. Rep. No. 345, Cong., 2nd Sess. at 2 (1986).

45. The Anti-Kickback Law prohibits any person or entity from making or accepting payment to induce or reward any person from referring, recommending, or arranging for federally-funded medical services, including services provided under Medicare and Medicaid. In pertinent part, the statute states:

> Whoever (1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program (as defined in subsection (f) of this section), (2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such benefit or payment, shall be guilty of a felony. 42. U.S.C. § 1320a-7b(b).

46. The Stark Law. 42 U.S.C. §1395nn, is also known as the Physician Self-Referral Law. The regulations are at 42 C.F.R. § 411.350 *et seq*. Under the Stark Law, if a physician (or immediate family member) has a direct or indirect financial relationship (by way of ownership or compensation) with an entity that provides any of the health services identified in the statute ("designated health services" or "DHS") the physician cannot refer patients to the entity for DHS and the entity cannot submit a claim to

Medicare or Medicaid for such DHS unless the financial relationship comes under a statutory or regulatory exception.

47. Liability under the Stark Law involves three elements: (1) a physician refers a patient to an entity for a designated health service; (2) the physician and the entity have a financial relationship, and (3) none of the Stark exceptions apply.

48. The case law is well established, including that of the Fifth Circuit, that the submission of claims in violation of the Stark Law can give rise to False Claims liability. Every UB-92, CMS-1450, CMS-1500, and other claim forms submitted to Government Healthcare Programs by Defendants for services rendered to patients who were unlawfully referred in violation of the Stark Law and/or Anti-Kickback Law were also false.

## V. ALLEGATIONS

49. Relator Holderith began working for One Step Diagnostic in October 2008, with a title of "Physician Relations." Her primary duties were marketing out of an office in Pearland Texas, which is believed to be the One Step Diagnostic IV office. Relator Holderith was hired by Defendant Cochinwala, and upon her hiring, she was instructed as part of her job duties to set up meetings between Cochinwala and various physicians, podiatrists, and chiropractors (hereinafter collectively referred to as "physicians") in the Houston metropolitan area.

50. Relator Holderith learned directly through communications with Defendant Cochinwala after these meetings occurred that Cochinwala had entered into a "medical consultant" or "medical director" agreement with the physicians. She was then personally instructed by Cochinwala to deliver a monthly check to each physician with

whom there was an agreement accompanied by a set of medical records that the physician was to "review" in conjunction with the consulting agreement. However, on numerous occasions, Defendant Cochinwala had Relator Holderith deliver checks to these physicians with no records to review whatsoever.

51. Due to her concerns, Relator Holderith obtained copies of the "consulting" contracts used by Defendant Cochinwala as well as the checks paid out the physicians. It was discovered that the contracts were nothing more than a sham. A "Medical Consultant" or a "Medical Director" is a real position, legitimately used by radiology clinics to advise the clinics on a multitude of practice elements including but not limited to the proper ethics in treating patients as well as having the Director or Consultant review the propriety of the equipment used by the clinic.

52. Defendants' contracts listed three "duties" to be performed by the consulting physician: 1) Inspection and review of center; 2) QA/QC (presumably Quality Assurance/Quality Control and 3) Coordination of Marketing efforts. Every month, Defendants would deliver a pre-generated spreadsheet to these providers, many of them podiatrists, and have them sign the spreadsheet noting that the diagnostic scans were "accurately performed." In return for the signature, they were paid. There was no inspection or review of any center, and no "marketing" efforts undertaken by any health care provider. In sum, these "consultant" contracts were nothing more than an attempt to disguise the illegal and unethical kickbacks paid to these providers for their referral of patients.

53. Upon receipt of the contracts, Relator Holderith obtained checks showing that the kickback payments were initially paid through each One Step facility's respective

center. More specifically, for one of the checks paid to podiatrist Jeffrey Baxter, the monthly kickback check was issued by One Step Diagnostic VIII, LP. It is presumed that the other One Step Diagnostic Clinics mentioned in this complaint issued their own kickback checks, in a clear attempt to create confusion and disguise the vast multitude of illegal monies being distributed each month.

54. Relator Holderith also noticed that checks to certain chiropractors, such as Vincent Jeter, were paid monthly even though no written consulting agreement with him had been executed. It is clear that Defendants could not have a paper trail listing a chiropractor performing quality assurance review of diagnostic scans ordered by a physician, and thus, the payments were made illicitly and illegally and solely for the referral of the chiropractors' patients.

55. In approximately late 2011 to early 2012, Defendant Cochinwala learned that another imaging center in the Houston, Texas area was being investigated by the State for self-referrals, illegal kickbacks, fee-splitting, and potential Stark violations. During this time, Relator Holderith began to notice that the illegal checks she was instructed to deliver either bore the name "Arc Imaging LLC" or "Houston Diagnostic," companies both known to be owned and operated in conjunction with Defendants Cochinwala and Dhawan. She also witnessed the delivery of a cash payment to a physician with who Defendants had an existing "consultant" relationship. Defendant Cochinwala explained to Relator Holderith that Arc Imaging LLC and Houston Diagnostic were "scheduling companies" and "affiliates" of One Step.

56. Relator Holderith has personally spoken to marketing representatives for approximately eight (8) other centers operating under the One Step banner. All of the

reps confided to her that they were delivering monthly checks to healthcare providers in exchange for payment referrals. Since she has been employed by Defendant Cochinwala, she has been asked by some of the podiatrists, including Dr. Mark Sands, to have their monthly payment increased, to which Cochinwala obliged. In addition, Cochinwala provided $25.00 gift cards to any member of his office staff who referred a patient to One Step.

57. After coming to the conclusion that Defendants were possibly engaging in illegal and unethical activity, Relator Holderith has decided to come forward, attaching her affidavit attesting to these facts as Exhibit "A" to the disclosure statement filed in conjunction with this Complaint. Attached as Exhibit "B" to her statement is also a compilation of the kickback checks from One Step Diagnostic VIII, LP, Arc Imaging LLC, the "consulting" agreements with these alleged physicians, and the sham spreadsheets signed by those physicians in order to obtain payment.

58. Relator Flake was hired by a physician, David Villacres, to schedule EMG studies for patients referred by Dr. Villacres to Defendant One Step Diagnostic. Relator Flake was told that the One Step Diagnostic center was a freestanding imaging center separate from Dr. Villacres' practice.

59. Relator Flake was informed by Dr. Villacres that he had an agreement with One Step Diagnostic with a "partner" of the imaging center. This "partner" was later identified as Defendant Rahul Dhawan. In return for Dr. Villacres' referrals, he would receive fifty (50%) percent of the profit from each EMG on the patients Dr. Villacres' referred. Relator Flake also discovered later this fee-splitting scheme in return for patient referrals was also performed on patients undergoing MRI's at One Step

Diagnostic's imaging center. The mixture of patients referred to One Step Diagnostic and scheduled by Relator Flake includes patients with Medicare and Medicaid provider health benefits.

60. Relator Flake also discovered that the EMG's were being performed at the One Step Diagnostic center by a person who held only a doctorate in Education, and thus had no medical training to perform EMG's. After the EMG's were completed, the reports were emailed to Dr. Villacres and billed to the Government under his NPI number, thus resulting in the submission and payment of false medical claims that were not rendered by a medical provider.

61. At all times material to Relator's Flake employment with Dr. Villacres and his business association with One Step Diagnostic, Relator Flake was informed by Dr. Villacres that the arrangement to split fees with Defendants Dhawan and One Step Diagnostic was "legal." Relator Flake has obtained spreadsheets which include figures detailing the illegal kickbacks and fee-splitting generated by the patient referrals from Dr. Villacres to Defendants. Further, she has attached an affidavit to the Disclosure Statement submitted with this Complaint. Those items are set out as Exhibits "C" and "D" to this Complaint.

62. John/Jane Does 1-100 are physicians, podiatrists, and/or chiropractors practicing in the Houston metropolitan area who acted as "Medical Consultants" and were provided payments by Defendants One Step Diagnostic, Fuad Cochinwala, Rahul Dhawan, and/or Arc Imaging LLC. These payments were provided in spite of little or no work performed by these "Consultants," other than signing a spreadsheet alleging a

review of other physicians' radiological reports. John/Jane Does 1-100 agreed to refer imaging studies to these Defendants in exchange for monthly payments.

## VI. CAUSES OF ACTION

### Count 1: False Claims Act

63. Relators repeat and re-allege each allegation contained in Paragraphs 1 through 61, above, as if fully set forth herein.

64. This is a claim by Relators, on behalf of the United States of America, for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729, *et seq*. against Defendants for knowingly causing to be presented false claims to Government Healthcare Programs. From at least 2008 to the present, in the Southern District of Texas, Defendants have knowingly and willfully presented and caused to be presented false claims.

65. Defendants have presented and caused to be presented claims for payment to the Government Healthcare Programs, knowing such claims were false.

### Count 2: Texas False Claims Act

66. Relators repeat and re-allege each allegation contained in Paragraphs 1 through 61, above, as if fully set forth herein.

67. Medicaid is jointly financed by the federal government and the states. The Secretary of the U.S. Department of Health and Human Services determines each state's federal share of most healthcare costs using a formula based on average state per capita income compared to the U.S. average. These matching rates are updated every year to reflect changes in average income.

68. The matching rate of the State of Texas over the past ten years has been approximately sixty (60) percent; that is, the state must pay approximately (40) percent of most Medicaid costs.

69. The Texas Health and Human Services Commission administers the Texas Medicaid Program.

70. This *qui tam* action is brought by Relators on behalf of the State of Texas to recover double damages and civil penalties under V.T.C.A. HUM. RES. CODE §§ 36.001, *et seq.*

71. V.T.C.A. HUM. RES. CODE §§ 36.001 provides liability for any person who:

(1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

(B) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(5) except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to the amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

(9) knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an

unauthorized payment or benefit from the Medicaid program or a fiscal agent; and

(13) knowingly engages in conduct that constitutes a violation under 32.039(b).

72. Defendants violated V.T.C.A. HUM. RES. CODE §§ 36.002 and knowingly caused thousands of false claims to be made, used, and presented to the State of Texas by their deliberate and systematic violations of federal and state laws, including the federal Anti-kickback Act, the Stark Law, and § 36.002.

73. The State of Texas, by and through the Texas Medicaid Program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

74. Compliance with applicable Medicare, Medicaid, and various other federal and state laws cited herein was an implied and express condition of payment of claims submitted to the State of Texas in connection with Defendants' conduct. Compliance with applicable Texas statutes and regulations was also an express condition of payment of claims submitted to the State of Texas.

75. Had the State of Texas known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct were premised on the false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

76. As a result of Defendants' violations of V.T.C.A. HUM. RES. CODE § 36.002, the State of Texas has been damaged in an amount in excess of millions of dollars exclusive of interest.

21

77. Defendants did not, within thirty (30) days after they first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

78. Relators are citizens of Texas with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to V.T.C.A. HUM. RES. CODE §§ 36.101 on behalf of themselves and the State of Texas.

79. This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the identical facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

## VII. DEFENDANTS' LIABILITY

80. By virtue of the acts described above, Defendants knowingly (a) submitted, and continue to submit, and/or (b) caused and/or continue to cause to be submitted, false or fraudulent claims to the United Stated Government for payment of services prescribed to Medicaid enrollees that were either excessively charged, deceptively charged, and/or unnecessarily charged.

81. The Government paid and continues to pay such false claims.

82. By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, through Relators, requests the Court enter the following relief:

A. That Defendants be ordered to cease and desist from violating 31 U.S.C. 3729, *et seq.;*

B. That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Five Hundred Dollars ($5,500) and not more than Eleven Thousand Dollars ($11,000) for each violation of 31 U.S.C. 3729;

C. That Relators be awarded the maximum amount allowed pursuant to Section 3730(d) of the False Claims Act;

D. That the Court enter judgment against the Defendants up to two times the amount of actual damages which the State of Texas has sustained as a result of Defendants' conduct;

E. A civil penalty of not less than Five Thousand Dollars ($5,000) or more than Ten Thousand Dollars ($10,000) pursuant to V.T.C.A. HUM. RES. CODE §§ 36.052(a)(3)(b) for each false claim which Defendants cause to be presented to the State of Texas;

F. Prejudgment interest;

G. That Relators be awarded all costs of this action, including attorney's fees and expenses; and

H. That Relators recover such other relief as the Court deems just and proper.

DATED this _____ day of _____, 2012.

Respectfully Submitted,

HARRIS, DUESLER, & HATFIELD L.L.P.

Collin Cobb
State Bar No. 24038058
550 Fannin, Ste. 650
Beaumont, Texas 77701
(409) 832-8382
(409) 833-4240 - Fax

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this Complaint and written disclosure of substantially all material evidence and information Relator possesses has been served on the Government in sealed envelopes marked "SEALED CASE" at the addresses set forth below pursuant to FRCP 4:

Attorney General of the United States
919 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

United States Attorney for the Southern District of Texas
919 Milam Street, Ste. 1500
Houston, Texas 77002

Dated: _____, 2012.

COLLIN D. COBB