# One Step Diagnostic IX

## MEDICAL CONSULTANT AGREEMENT

This MEDICAL CONSULTANT AGREEMENT ("Agreement"), entered into as of this 1st day of July 2011 (7/1/2011) of effective as of the 1st day of July 2011 (2011) is by and between One Step Diagnostic VIIII("Company"), located in Dickinson, Texas and Dr. Jeffrey Baxter ("Physician").

**WITNESSETH:**

WHEREAS, Company owns and operates outpatient imaging facilities located in Dickenson, Texas and surrounding areas, and

WHEREAS, Company has determined that the retention of a physician to provide professional medical consultation services for its imaging facility known as and located at 2401 FM 646 W Dickinson, TX 77539

WHEREAS, Physician is duly licensed in the State of Texas and qualified to provide the professional medical consultation services and

WHEREAS, Physician wishes to provide such services in accordance with the provisions of this Agreement and

WHEREAS, Company and Physician mutually desire that such services be made available under an arrangement that will facilitate the delivery of imaging services by the Company through the provision of Physician's services.

NOW, THEREFORE, for and in consideration of the promises set forth above the mutual benefits, covenants, and agreements set forth below, the parties hereby agree as follows:

## 1. Covenants of Physician

1.1     <u>Appointment of Physician.</u> Company hereby appoints Physician as a Professional Medical Consultant of Company, and Physician accepts such appointment to provide professional medical consulting services for the Company in accordance with the terms of this agreement.

1.2     <u>Qualifications of Physician.</u> Physician must at all times during the Term of this Agreement (i) have a full and unrestricted license to practice medicine in the State of Texas; and (ii) be fully capable and qualified, in accordance with good medical practice, to provide the necessary services for the Company.


EXHIBIT
B

1.3   <u>Duties of Physician.</u>  Physician shall devote a minimum of 6 hours per month to performance of the following services for Company:

(i)    Inspection and review of center
(ii)   QA/QC review
(iii)  Coordination of marketing efforts

In addition, Physician shall perform such duties as may from time to time be agreed to between Physician and Company.  In the performance of such duties, Physician shall be accountable to the President of the Company.

1.4   <u>Insurance.</u>  During the Term of this Agreement, and for the period of the applicable statute of limitations thereafter (for which statute of limitations Physicians liability may be satisfied by purchasing appropriate "tail" coverage), Physician shall continuously maintain professional malpractice insurance and broad form comprehensive liability insurance with a responsible company or companies authorized to do business in the State of Texas, with the policy limits which shall be continuously sufficient to protect against the probable amounts of potential judgments, and which shall initially be in an amount not less than $100,000.00 per occurrence and $300,000.00 in the aggregate.

1.5   <u>Confidentiality of Information.</u>  Physician agrees to keep confidential and not to use or disclose to others, directly or indirectly, either during the Term of this Agreement or during any other period of association with the Company extending beyond the Term, any secrets or proprietary information belonging to Company, including, but not limited to, patient lists, books, manuals, documents, policies, business or technical information, marketing programs and strategy concerning Company's business, or any matter or thing ascertained by Physician through Physician's association with Company, the use of disclosure of which might reasonably be construed to be contrary to the best interest of Company.  Without limiting other possible remedies to Company for the breach of this covenant, Physician agrees that injunctive or other equitable relief shall be available to enforce this covenant, such relief to be without the necessity of posting a bond, cash or otherwise.  Physician, further agrees that if any restrictions contained in this Section 1.5 is held by any court of competent jurisdiction to be unenforceable or unreasonable, a lesser restriction shall be enforced in its place and fully indemnify Company from any loss that may be incurred as a result of a breach of this covenant by Physician.

1.6 **Administrative Reports.** Physician shall timely prepare and file such administrative reports as Company may reasonable request and be prepared to analyze and interpret such reports upon the request of Company. Company shall provide clerical support for the preparation and filing of any such report it deems necessary.

1.7 **Applicable Standards.** Physician's performance of professional consulting services to the Company shall be in accordance with any law, standard, ruling or regulation of the State of Texas, the United States Department of Health and Human Services, and any other federal, state or local government agency, corporate entity, or individual exercising authority with respect to, or affecting, the Company.

## II. Covenants of Company

2.1 **Operational Requirements.** Company shall after considering the recommendations of Physician, provide such facilities, equipment, supplies, utilities, janitorial, laundry and other support services as the Company shall deem necessary or appropriate for the operation of the center in a safe and efficient manner.

2.2 **Company Personnel.** Company shall, after considering the recommendations of Physician, employ, terminate and when it deems appropriate, reinstate such personnel, as the Company deems necessary for the proper operation of the Center, including, without limitation, technicians, clerical staff, and other support staff.

## III. Financial Arrangement

3.1 **Amount of Compensation.** In consideration of the professional medical services rendered each month by Physician pursuant to this Agreement, the Company shall pay to Physician the amount of 2500.00 per month. Physician agrees that such amount shall be Physician's sole compensation for services furnished pursuant to this Agreement and no charges shall be made to patients or third party payer by Physician for such services.

3.2 **Payment of Compensation.** Company shall remit to Physician the monthly compensation amount set forth in Section 3.1 hereof within seven days of receipt of the time records for the month as required by Section 3.3.

3.3 **Time Records.** Physician agrees to record promptly and maintain all Information that, in the judgment of Company, is necessary or desirable in order for Company to have time records relating to Physician's services hereunder. The form of such time records shall

be determined, and may be from time to time amended, by Company and Physician agrees to consult with Company from time to time regarding the form and content of such records. Physician agrees to submit such time records on or before the last day of the month, for services that are rendered during the month then ended.

## IV. Term and Termination of Agreement.

**4.1   Term.** This agreement shall be effective as of (7/1/2011) for a term of one (1) year there from, subject, however to Sections 4.2 and 4.3 hereof.

**4.2   Immediate Termination by the Company.** The Company may, as its option, terminate this Agreement immediately by written notice to Physician upon the occurrence of any of the following events: (a) the denial, suspension, revocation, termination, restriction or voluntary relinquishment of Physician's professional license; or (b) a determination is made by the governing body of Company that the health or safety of any patient receiving care through Company is being jeopardized by the services provided by Physician under this Agreement.

**4.3   Optional Termination.** At any time during the term of this Agreement, either party may terminate this Agreement without cause, upon the giving of thirty (30) days advance written notice to the other party.

## V. Miscellaneous

**5.1   Status of Physician.** It is expressly acknowledged by the parties hereto that Physician is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create and employer/employee relationship, a joint venture relationship, or to allow the Company to exercise control or director over the manner or method by which Physician performs the services which are the subject matter of this Agreement, provided, always, that the services to be furnished hereunder by Physician shall be provided in a manner consistent with Company policies, the standards governing such services, and the provisions of this Agreement. Physician understands and agrees that, (a) Physician will not be treated as an employee for federal tax purposes; (b) Company will not withhold on behalf of Physician pursuant to this Agreement any sums for income tax, unemployment insurance, social security, retirement benefits, or any other withholding pursuant to any law or requirement of any governmental body relating to Physician, or make available to

Physician any of the benefits afforded to employees of Company; (c) all of such payments, withholdings and benefits, if any, are the sole responsibility of Physician; and (d) Physician will indemnify and hold Company harmless from any and all loss or liability arising with respect to such payments, withholding or benefits, if any.  In the event the Internal Revenue Service or any other governmental agency should question or challenge the independent contractor status of Physician and Company shall have the right to participate in any discussion or negotiation occurring with such agency or agencies, irrespective of whom or by whom such discussion or negotiation is initiated.

5.2   <u>Severability.</u>  In the event any provision of this Agreement is held to be unenforceable or invalid for any reason, this Agreement is held to be unenforceable or invalid for any reason, this Agreement shall remain in full force and effect and enforceable in accordance with its terms disregarding such unenforceable or invalid provision.

5.3   <u>Entire Agreement Amendments.</u>  This Agreement sets forth all of the representations, promises, agreements, conditions and understandings between the parties relating to the subject matter of this Agreement, and supersedes any prior or contemporaneous representations, promises, agreements, conditions and understandings between the parties in any manner relating to the subject matter hereof. This Agreement may be amended but only by a written agreement signed by both parties.

5.4   <u>Notices.</u>  All notices, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been given or delivered or mailed by registered mail, return receipt requested, postage prepaid to the following address:

If to Physician: Dr. Jeffrey Baxter
119 E. Edgewood
Friendswood, TX 77546

If to Company.

Attn: Fuad Cochinwala- President
11221 Katy FWY #201
Houston, TX 77079

5.5     <u>Assignment.</u> Physician may not assign or transfer any of Physician rights, duties or obligations under this Agreement, in whole or in part, without the prior written consent of Company. Company may assign or transfer any of its rights, duties or obligations under this Agreement, in whole or in part to any successor entity operating Company.

5.6     <u>Governing Law.</u> This agreement has been executed and delivered in, and shall be interpreted, construed and enforced pursuant to and in accordance with the laws of the State of Texas. All duties and obligations of the parties created hereunder are performable in Harris County, Texas and Harris County, Texas shall be the sole and exclusive venue for any litigation, special proceeding or other proceeding as between the parties that may be brought or arise out of, in connection with, or by reason of this Agreement.

5.7     <u>No Waiver.</u> The failure of either party to insist at any time upon the strict observance or performance of any provision of this Agreement or to exercise any right or remedy as provided in this Agreement shall not impair any right or remedy of such party or be construed as a waiver or relinquishment thereof with respect to subsequent defaults or breaches. Every right and remedy given by this Agreement to the parties hereto may be exercised from time to time and as often as may be deemed expedient by the appropriate party.

5.8     <u>Additional Assurances.</u> Physician and Company agree that each shall promptly and duly execute and deliver to the other such additional documents and assurances and take any and all other actions as either party may reasonably request in order to carry out the intent and purpose of this Agreement during the term hereof.

**IN WITNESS WHEREOF, the parties have executed this Agreement in multiple originals as of the date above first written.**

| | |
|---|---|
| **Physician** | **Company** |
| | **One Step Diagnostic** |
| By: _____ | By: _____ |
| Name: Dr. Jeffrey Baxter | Name: Fuad Cochinwala |
| Title: Physician | Title: President |

# One Step Diagnostic  Inc.
## MEDICAL CONSULTANT AGREEMENT

This MEDICAL CONSULTANT AGREEMENT ("Agreement"), entered into as of this 1st day of October , 2009 effective as of October 1 , 2009 is by and between One Step Diagnostic("Company"), located in Houston, Texas and Dr. Jeffrey Baxter ("Physician").

**WITNESSETH:**

WHEREAS, Company owns and operates outpatient imaging facilities located in Houston and surrounding areas, and

WHEREAS, Company has determined that the retention of a physician to provide professional medical consultation services for its imaging facility known as One Step Diagnostic and located at .

WHEREAS, Physician is duly licensed in the State of Texas and qualified to provide the professional medical consultation services and

WHEREAS, Physician wishes to provide such services in accordance with the provisions of this Agreement and

WHEREAS, Company and Physician mutually desire that such services be made available under an arrangement that will facilitate the delivery of imaging services by the Company through the provision of Physician's services.

NOW, THEREFORE, for and in consideration of the promises set forth above the mutual benefits, covenants, and agreements set forth below, the parties hereby agree as follows:

## 1. Covenants of Physician

1.1 **Appointment of Physician.** Company hereby appoints Physician as a Professional Medical Consultant of Company, and Physician accepts such appointment to provide professional medical consulting services for the Company in accordance with the terms of this agreement.

1.2 **Qualifications of Physician.** Physician must at all times during the Term of this Agreement (i) have a full and unrestricted license to practice medicine in the State of Texas; and (ii) be fully capable and qualified, in accordance with good medical practice, to provide the necessary services for the Company.

1.3    **Duties of Physician.**  Physician shall devote a minimum of 10 hours per month to performance of the following services for Company:

        (i)     Inspection and review of center
        (ii)    QA/QC review
        (iii)   Coordination of marketing efforts

In addition, Physician shall perform such duties as may from time to time be agreed to between Physician and Company.  In the performance of such duties, Physician shall be accountable to the President of the Company.

1.4    **Insurance.**  During the Term of this Agreement, and for the period of the applicable statute of limitations thereafter (for which statute of limitations Physicians liability may be satisfied by purchasing appropriate "tail" coverage), Physician shall continuously maintain professional malpractice insurance and broad form comprehensive liability insurance with a responsible company or companies authorized to do business in the State of Texas, with the policy limits which shall be continuously sufficient to protect against the probable amounts of potential judgments, and which shall initially be in an amount not less than $100,000.00 per occurrence and $300,000.00 in the aggregate.

1.5    **Confidentiality of Information.**  Physician agrees to keep confidential and not to use or disclose to others, directly or indirectly, either during the Term of this Agreement or during any other period of association with the Company extending beyond the Term, any secrets or proprietary information belonging to Company, including, but not limited to, patient lists, books, manuals, documents, policies, business or technical information, marketing programs and strategy concerning Company's business, or any matter or thing ascertained by Physician through Physician's association with Company, the use of disclosure of which might reasonably be construed to be contrary to the best interest of Company.  Without limiting other possible remedies to Company for the breach of this covenant, Physician agrees that injunctive or other equitable relief shall be available to enforce this covenant, such relief to be without the necessity of posting a bond, cash or otherwise.  Physician, further agrees that if any restrictions contained in this Section 1.5 is held by any court of competent jurisdiction to be unenforceable or unreasonable, a lesser restriction shall be enforced in its place and fully indemnify Company from any loss that may be incurred as a result of a breach of this covenant by Physician.

**1.6**   **Administrative Reports.**  Physician shall timely prepare and file such administrative reports as Company may reasonable request and be prepared to analyze and interpret such reports upon the request of Company.  Company shall provide clerical support for the preparation and filing of any such report it deems necessary.

**1.7**   **Applicable Standards.**  Physician's performance of professional consulting services to the Company shall be in accordance with any law, standard, ruling or regulation of the State of Texas, the United States Department of Health and Human Services, and any other federal, state or local government agency, corporate entity, or individual exercising authority with respect to, or affecting, the Company.

## II.   Covenants of Company

**2.1**   **Operational Requirements.**  Company shall after considering the recommendations of Physician, provide such facilities, equipment, supplies, utilities, janitorial, laundry and other support services as the Company shall deem necessary or appropriate for the operation of the center in a safe and efficient manner.

**2.2**   **Company Personnel.**  Company shall, after considering the recommendations of Physician, employ, terminate and when it deems appropriate, reinstate such personnel, as the Company deems necessary for the proper operation of the Center, including, without limitation, technicians, clerical staff, and other support staff.

## III.   Financial Arrangement

**3.1** Amount of Compensation.  In consideration of the professional medical services rendered each month by Physician pursuant to this Agreement, the Company shall pay to Physician the amount of 1500.00 per month. Physician agrees that such amount shall be Physician's sole compensation for services furnished pursuant to this Agreement and no charges shall be made to patients or third party payer by Physician for such services.

**3.2**   **Payment of Compensation.**  Company shall remit to Physician the monthly compensation amount set forth in Section 3.1 hereof within seven days of receipt of the time records for the month as required by Section 3.3.

**3.3**   **Time Records.**  Physician agrees to record promptly and maintain all Information that, in the judgment of Company, is necessary or desirable in order for Company to have time records relating to Physician's services hereunder.  The form of such time records shall

Physician any of the benefits afforded to employees of Company; (c) all of such payments, withholdings and benefits, if any, are the sole responsibility of Physician; and (d) Physician will indemnify and hold Company harmless from any and all loss or liability arising with respect to such payments, withholding or benefits, if any. In the event the Internal Revenue Service or any other governmental agency should question or challenge the independent contractor status of Physician and Company shall have the right to participate in any discussion or negotiation occurring with such agency or agencies, irrespective of whom or by whom such discussion or negotiation is initiated.

5.2   <u>Severability.</u>  In the event any provision of this Agreement is held to be unenforceable or invalid for any reason, this Agreement is held to be unenforceable or invalid for any reason, this Agreement shall remain in full force and effect and enforceable in accordance with its terms disregarding such unenforceable or invalid provision.

5.3   <u>Entire Agreement Amendments.</u>  This Agreement sets forth all of the representations, promises, agreements, conditions and understandings between the parties relating to the subject matter of this Agreement, and supersedes any prior or contemporaneous representations, promises, agreements, conditions and understandings between the parties in any manner relating to the subject matter hereof. This Agreement may be amended but only by a written agreement signed by both parties.

5.4   <u>Notices.</u>  All notices, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been given or delivered or mailed by registered mail, return receipt requested, postage prepaid to the following address:

If to Physician: Dr. Jeffrey Baxter

If to Company. One Step Diagnostic

5.5   <u>Assignment.</u>  Physician may not assign or transfer any of Physician rights, duties or obligations under this Agreement, in whole or in part, without the prior written consent of Company.  Company may assign or transfer any of its rights, duties or obligations under this

Agreement, in whole or in part to any successor entity operating Company.

5.6   <u>Governing Law.</u>  This agreement has been executed and delivered in, and shall be interpreted, construed and enforced pursuant to and in accordance with the laws of the State of Texas.  All duties and obligations of the parties created hereunder are performable in Harris County, Texas and Harris County, Texas shall be the sole and exclusive venue for any litigation, special proceeding or other proceeding as between the parties that may be brought or arise out of, in connection with, or by reason of this Agreement.

5.7   <u>No Waiver.</u>  The failure of either party to insist at any time upon the strict observance or performance of any provision of this Agreement or to exercise any right or remedy as provided in this Agreement shall not impair any right or remedy of such party or be construed as a waiver or relinquishment thereof with respect to subsequent defaults or breaches.  Every right and remedy given by this Agreement to the parties hereto may be exercised from time to time and as often as may be deemed expedient by the appropriate party.

5.8   <u>Additional Assurances.</u>  Physician and Company agree that each shall promptly and duly execute and deliver to the other such additional documents and assurances and take any and all other actions as either party may reasonably request in order to carry out the intent and purpose of this Agreement during the term hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement in multiple originals as of the date above first written.

Physician

By:

Name: Dr. Jeffrey Baxter

Title:

Company

By:

Name: Fuad Cochinwala

Title:

# MEDICAL CONSULTANT AGREEMENT

This MEDICAL CONSULTANT AGREEMENT ("Agreement"), entered into as of this 1st day of October , 2009 effective as of the 1st day of October, 2009 is by and between One Step Diagnostic("Company"), located in Houston, Texas and Dr. Canlas ("Physician").

WITNESSETH:

WHEREAS, Company owns and operates outpatient imaging facilities located in  Houston, TX  and surrounding areas, and

WHEREAS, Company has determined that the retention of a physician to provide professional medical consultation services for its imaging facility known as One Step Diagnostic II and located at 7227 Fannin #102 Houston, TX 77030

WHEREAS, Physician is duly licensed in the State of Texas and qualified to provide the professional medical consultation services and

WHEREAS, Physician wishes to provide such services in accordance with the provisions of this Agreement and

WHEREAS, Company and Physician mutually desire that such services be made available under an arrangement that will facilitate the delivery of imaging services by the Company through the provision of Physician's services.

NOW, THEREFORE, for and in consideration of the promises set forth above the mutual benefits, covenants, and agreements set forth below, the parties hereby agree as follows:

1. **Covenants of Physician**

    1.1    **Appointment of Physician.**  Company hereby appoints Physician as a Professional Medical Consultant of Company, and Physician accepts such appointment to provide professional medical consulting services for the Company in accordance with the terms of this agreement.

    1.2    **Qualifications of Physician.**  Physician must at all times during the Term of this Agreement (i) have a full and unrestricted license to practice medicine in the State of Texas; and (ii) be fully capable and qualified, in accordance with good medical practice, to provide the necessary services for the Company.

1.3    <u>Duties of Physician.</u>  Physician shall devote a minimum of 10 hours per month to performance of the following services for Company:

      (i)     Inspection and review of center
      (ii)    QA/QC review
      (iii)   Coordination of marketing efforts

In addition, Physician shall perform such duties as may from time to time be agreed to between Physician and Company.  In the performance of such duties, Physician shall be accountable to the President of the Company.

1.4    <u>Insurance.</u>  During the Term of this Agreement, and for the period of the applicable statute of limitations thereafter (for which statute of limitations Physicians liability may be satisfied by purchasing appropriate "tail" coverage), Physician shall continuously maintain professional malpractice insurance and broad form comprehensive liability insurance with a responsible company or companies authorized to do business in the State of Texas, with the policy limits which shall be continuously sufficient to protect against the probable amounts of potential judgments, and which shall initially be in an amount not less than $100,000.00 per occurrence and $300,000.00 in the aggregate.

1.5    <u>Confidentiality of Information.</u>  Physician agrees to keep confidential and not to use or disclose to others, directly or indirectly, either during the Term of this Agreement or during any other period of association with the Company extending beyond the Term, any secrets or proprietary information belonging to Company, including, but not limited to, patient lists, books, manuals, documents, policies, business or technical information, marketing programs and strategy concerning Company's business, or any matter or thing ascertained by Physician through Physician's association with Company, the use of disclosure of which might reasonably be construed to be contrary to the best interest of Company.  Without limiting other possible remedies to Company for the breach of this covenant, Physician agrees that injunctive or other equitable relief shall be available to enforce this covenant, such relief to be without the necessity of posting a bond, cash or otherwise.  Physician, further agrees that if any restrictions contained in this Section 1.5 is held by any court of competent jurisdiction to be unenforceable or unreasonable, a lesser restriction shall be enforced in its place and fully indemnify Company from any loss that may be incurred as a result of a breach of this covenant by Physician.

**1.6**   **Administrative Reports.**  Physician shall timely prepare and file such administrative reports as Company may reasonable request and be prepared to analyze and interpret such reports upon the request of Company.  Company shall provide clerical support for the preparation and filing of any such report it deems necessary.

**1.7**   **Applicable Standards.**  Physician's performance of professional consulting services to the Company shall be in accordance with any law, standard, ruling or regulation of the State of Texas, the United States Department of Health and Human Services, and any other federal, state or local government agency, corporate entity, or individual exercising authority with respect to, or affecting, the Company.

**II.**   **Covenants of Company**

**2.1**   **Operational Requirements.**  Company shall after considering the recommendations of Physician, provide such facilities, equipment, supplies, utilities, janitorial, laundry and other support services as the Company shall deem necessary or appropriate for the operation of the center in a safe and efficient manner.

**2.2**   **Company Personnel.**  Company shall, after considering the recommendations of Physician, employ, terminate and when it deems appropriate, reinstate such personnel, as the Company deems necessary for the proper operation of the Center, including, without limitation, technicians, clerical staff, and other support staff.

**III.**   **Financial Arrangement**

**3.1**   **Amount of Compensation.**  In consideration of the professional medical services rendered each month by Physician pursuant to this Agreement, the Company shall pay to Physician the amount of  1500.00 per month. Physician agrees that such amount shall be Physician's sole compensation for services furnished pursuant to this Agreement and no charges shall be made to patients or third party payer by Physician for such services.

**3.2**   **Payment of Compensation.**  Company shall remit to Physician the monthly compensation amount set forth in Section 3.1 hereof within seven days of receipt of the time records for the month as required by Section 3.3.

**3.3**   **Time Records.**  Physician agrees to record promptly and maintain all Information that, in the judgment of Company, is necessary or desirable in order for Company to have time records relating to Physician's services hereunder.  The form of such time records shall

be determined, and may be from time to time amended, by Company and Physician agrees to consult with Company from time to time regarding the form and content of such records.  Physician agrees to submit such time records on or before the last day of the month, for services that are rendered during the month then ended.

## IV.    Term and Termination of Agreement.

**4.1    Term.**  This agreement shall be effective as of October 1, 2009 for a term of 1 year there from, subject, however to Sections 4.2 and 4. hereof.

**4.2    Immediate Termination by the Company.**  The Company may, as its option, terminate this Agreement immediately by written notice to Physician upon the occurrence of any of the following events: (a) the denial, suspension, revocation, termination, restriction or voluntary relinquishment of Physician's professional license; or (b) a determination is made by the governing body of Company that the health or safety of any patient receiving care through Company is being jeopardized by the services provided by Physician under this Agreement.

**4.3    Optional Termination.**  At any time during the term of this Agreement, either party may terminate this Agreement without cause, upon the giving of thirty (30) days advance written notice to the other party.

## V.    Miscellaneous

**5.1    Status of Physician.**  It is expressly acknowledged by the parties hereto that Physician is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create and employer/employee relationship, a joint venture relationship, or to allow the Company to exercise control or director over the manner or method by which Physician performs the services which are the subject matter of this Agreement, provided, always, that the services to be furnished hereunder by Physician shall be provided in a manner consistent with Company policies, the standards governing such services, and the provisions of this Agreement.  Physician understands and agrees that, (a) Physician will not be treated as an employee for federal tax purposes; (b) Company will not withhold on behalf of Physician pursuant to this Agreement any sums for income tax, unemployment insurance, social security, retirement benefits, or any other withholding pursuant to any law or requirement of any governmental body relating to Physician, or make available to Physician any of the benefits afforded to employees of Company; (c)



VISTA BANK TEXAS

88-378/1131

**ONE STEP DIAGNOSTIC VIII LP**
11221 KATY FREEWAY STE 201
HOUSTON, TX 77079

9/12/2012

PAY TO THE
ORDER OF ___ Dr Baxter

$ **1,500.00

One Thousand Five Hundred and 00/100************************************************************  DOLLARS

Dr Baxter

MEMO

AUTHORIZED SIGNATURE

⑈00Ⅰ799⑈ ⑈:ⅠⅠ3Ⅰ0379?⑈: 04 Ⅰ ⑈ Ⅰ6 29⑈⑈

1799

**ONE STEP DIAGNOSTIC VIII LPP**

Dr Baxter

9/12/2012                    1,500.00

1,500.00

Vista Bank - 041629



**ONE STEP DIAGNOSTIC VIII LP**
11221 KATY FREEWAY STE 201
HOUSTON, TX 77079

VISTA BANK TEXAS

88-370/1131

8/1/2012

PAY TO THE
ORDER OF ___ Dr Baxter                                    $ **2,500.00

Two Thousand Five Hundred and 00/100********************************************* DOLLARS

Dr Baxter

AUTHORIZED SIGNATURE

MEMO

⑈00171⑈ ⑆113103797⑆ 04⑈639⑈

1712

ONE STEP DIAGNOSTIC VIII LPP

Dr Baxter                                    8/1/2012

2,500.00

2,500.00

Vista Bank - 041629



ONE STEP DIAGNOSTIC VIII LP
11221 KATY FREEWAY STE 201
HOUSTON, TX 77079

VISTA BANK TEXAS

1714
88-379/1131

PAY TO THE
ORDER OF    Dr Baxter

8/2/2012

$ **1,500.00

One Thousand Five Hundred and 00/100************************************************************ DOLLARS

MEMO

Dr Baxter

AUTHORIZED SIGNATURE

⑊00ı7ıı⑊ ⑊ıı3ı03ı797ı⑊ 04ıᵇᵉᶜᵍ 29ıı⑊

ONE STEP DIAGNOSTIC VIII LPP          1714

Dr Baxter                            8/2/2012          1,500.00

Vista Bank : 041629                                    1,500.00



ARC IMAGING LLC
7941 KATY FREEWAY SUITE 302
HOUSTON, TX 77024-1924

VISTA BANK TEXAS

2106
88-378/1131

9/12/2012

PAY TO THE
ORDER OF___ Dr. Jeter

$ **2,500.00

Two Thousand Five Hundred and 00/100************************************************************* DOLLARS

Dr. Jeter

MEMO                                                      AUTHORIZED SIGNATURE

⑈00 2 10⑈⑈ ⑈:⑈ ⑈ 3 ⑈0 3 7 9 7⑈: 0 3 8⑈⑈ ⑈ 90⑈⑈

ARC IMAGING LLC                                           2106

Dr. Jeter                    9/12/2012                    2,500.00

Vista Bank                                                2,500.00

# One Step Diagnostic VIII Quality Assurance Form

2401 FM 646 Rd w # B
Dickinson, TX 77539
Phone281-534-3700

| Patient name | Date of Service | Ref Doctor | Exam | Exam performed as ordered Y/N |
|---|---|---|---|---|
| Degraaf, Ethan | 7.31.2012 | Dr. Clause | MR LT Foot | |
| McAdams, Floyd | 8.14.2012 | Dr. Oistad | MR L Spine | |
| Trevisani, Patricia | 8.14.2012 | Dr. Knecht | MR RT Foot | |
| | | | | |
| | | | | |
| | Radiology Read Accurate Y/N | Contrast Y/N | File Reviewed Signature | |
| Degraaf, Ethan | | | | |
| McAdams, Floyd | | | | |
| Trevisani, Patricia | | | | |
| | | | | |

All Files have been reviewed and exams have been accuratley performed as ordered

Dr. Baxter _____        8.31.2012
                                               Date

# One Step Diagnostic II Quality Assurance Form

7227 Fannin #102
Houston, TX
Phone 713-795-9200
Fax: 713-795-9201

| Patient name | Date of Service | Ref Doctor | Exam | Exam performed as ordered Y/N |
|---|---|---|---|---|
| Gardner, James | 9.29.09 | Dr. Aparasu | MRI Brain W/WO | |
| Ybarra, Margaret | 9.29.09 | Dr. Barias | MRI Lumbar W/WO | |
| Newcomb, Charles | 9.29.09 | Dr. Harvey | MRI Rt Knee | |
| Sartwelle, Victoria | 9.30.09 | Dr. Said | MRI Cervical | |
| | | | | |
| | | | | |
| | Radiology Read Accurate Y/N | Contrast Y/N | File Reviewed Signature | |
| Gardner, James | | | | |
| Ybarra, Margaret | | | | |
| Newcomb, Charles | | | | |
| Sartwelle, Victoria | | | | |

All Files have been reviewed and exams have been accurately performed as ordered

Dr. Canlas                    10.31.09
                             Date

# One Step Diagnostic VI Quality Assurance Form

10223 Broadway Suite J
Pearland, TX 77584
Phone 832-327-4674
Fax: 832-327-1674

| Patient name | Date of Service | Ref Doctor | Exam | Exam performed as ordered Y/N |
|---|---|---|---|---|
| Douglas, Ronnie | 9.11.09 | Dr. Bangawala | MRI Left Hip | |
| Girndt, Kathy | 9.11.09 | Dr. Lewis | MRI C Spine | |
| Babin, Virginia | 9.10.09 | Dr. Arthur | MRI C Spine | |
| Fletcher, Vivian | 9.09.2009 | Dr. Randolph | MRI C Spine | |
| | | | | |
| | | | | |
| | Radiology Read Accurate Y/N | Contrast Y/N | File Reviewed Signature | |
| Douglas, Ronnie | | | | |
| Girndt, Kathy | | | | |
| Babin, Virginia | | | | |
| Fletcher, Vivian | | | | |

All Files have been reviewed and exams have been accuratley performed as ordered

Dr. Sands

10.31.09
Date